IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

COLIN COLLETTE,             )
                                 )
           Plaintiff,         )
                                 )
      v.                    )       No. 16-cv-2912
                                 )       Judge Charles Kocoras
HOLY FAMILY PARISH, THE       )
ARCHDIOCESE OF CHICAGO,     )
                                 )
           Defendants.     )

## DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Holy Family Parish and the Archdiocese of Chicago, by and through their attorneys, for their Rule 12(b)(6) motion to dismiss Plaintiff's Complaint (attached as *Exhibit A*) state as follows:

### INTRODUCTION

Plaintiff concedes that he was the **"Director of Worship"** and the **"Director of Music"** at Holy Family Parish (the "Parish"). [Compl., ¶9]. The Parish is a parish of the Archdiocese of Chicago.[1] Plaintiff's asserted discrimination claims following his termination from employment with the Parish are barred by the First Amendment to the United States Constitution, as applied by and through the Fourteenth Amendment to the United States Constitution, barring claims of employment discrimination brought by ministers of a church -- commonly referred to as the "ministerial exception." Accordingly, his Complaint should be dismissed.

---

[1]       The Archdiocese of Chicago is an archdiocese of the Roman Catholic Church, a hierarchical church led by the Pope. Defendant Catholic Bishop of Chicago is a corporation sole that holds the property of the archdiocese. Private Laws of the State of Illinois, 22d General Assembly at 78 (1861).

## ARGUMENT

Under the First Amendment to the Constitution, the government cannot interfere with the decision of a religious organization to terminate one of its ministers. "Requiring a church to accept or retain an unwanted minister, or punishing a church for failing to do so, intrudes upon more than a mere employment decision. Such action interferes with the internal governance of the church, depriving the church of control over the selection of those who will personify its beliefs." *Hosanna-Tabor Evangelical Lutheran Church and School v. EEOC et al.*, 132 S.Ct. 694, 706 (2012); *see also Herzog v. St. Peter Lutheran Church*, 884 F.Supp.2d 668 (N.D. Ill. 2012) ("The ministerial exception, grounded in the Free Exercise and Establishment Clauses of the First Amendment, precludes claims of employment discrimination against a religious institution brought by its ministers.")[2]

In *Tomic v. Catholic Diocese of Peoria*, 442 F.3d 1036 (7th Cir. 2006) (*rev'd on other grounds*), a music director of a Catholic diocese filed an age discrimination suit against St. Mary's Cathedral following his termination. The Seventh Circuit affirmed dismissal of the music director's claim finding that the music director's position fell within the ministerial exception to the Age Discrimination in Employment Act. *Id.* at 1040-41.[3] Here, Plaintiff not only held the

---

[2]     *See also Alicea-Hernandez v. Catholic Bishop of Chicago,* 320 F.3d 698 (7th Cir. 2003) (Archdiocese of Chicago Hispanic communications manager could not bring Title VII national origin claim); *Young v. Northern Illinois Conference of United Methodist Church,* 421 F.3d 184 (7th Cir. 1994) (Free Exercise Clause of First Amendment precluded jurisdiction over Title VII action brought by African-American woman who had served as probationary minister for church, where she alleged that church engaged in race and sex discrimination); *Tomic v. Catholic Diocese of Peoria,* 442 F.3d 1036 (7th Cir. 2006) (music director's ADEA claim barred by ministerial exception) (*rev'd on other grounds*).

[3]     *See also EEOC v. The Roman Catholic Archdiocese of Raleigh,* 213 F.3d 795, 802 (4th Cir. 2000) ("music is an integral part of Catholic worship and belief . . . [and] . . . is a vital means of expressing and celebrating those beliefs which a religious community holds most sacred."); *Starkman v. Evans,* 198 F.3d 173 (5th Cir. 1999) (choir director's ADA claim dismissed); *Fassl v. Our Lady of Perpetual Help Roman Catholic Church,* No. 05-CV-0404, 2005 WL 2455253 (E.D. Pa. Oct. 5, 2005) (Director of Music precluded from bringing FMLA suit); *Ross v. Metropolitan Church of God,* 471 F.Supp. 2d 1306 (N.D. Ga. 2007) (Director of Worship Arts (music director) barred from bringing section 1981 claim).

same position of music director as in *Tomic*, but was also the Director of **Worship** -- a position that, by its very terms, can be nothing other than religious.

Seeking to avoid dismissal pursuant to Rule 12, Plaintiff's entire Complaint is an artifice, disingenuously attempting to hide from the Court his obvious role as a minister, including his role as a representative of the Catholic Church and the Parish, and his duties as Director of **Worship** and Director of Music. Plaintiff's transparent attempt to create a fact question as to whether he "functioned" as a minister is to no avail. If a Parish *Director of Worship* is not a ministerial employee, then no one is. Tellingly, rather than pleading any job responsibility that he actually held, Plaintiff instead alleges a plethora of things that he purportedly did *not* do as the Director of Music, *see* Compl., ¶¶11-14, and wholly omits any mention of his responsibilities as Director of **Worship**. Those allegations and omissions are both misleading and factually inaccurate, and with regard to Plaintiff's role as Director of Music, comically suggestive that such position would have no connection to music whatsoever.

However, while Plaintiff attempts to artfully draft around the ministerial exception, that subterfuge *does not prevent* this Court from ruling on the dismissal motion at this juncture. Although courts sometimes have to make functional determinations as to whether an employee functioned as a minister -- primarily in cases where the job position is not necessarily ministerial (*see, e.g., Herzog, supra.*, 884 F.Supp.2d 668 ("called" teacher at religious school acted as minister)) -- this is not such a case.

While Plaintiff apparently would have this Court believe that each position he held, including one with the title of "worship," had no religious involvement, there can be no other conclusion but that Plaintiff was a minister. The OXFORD DICTIONARY defines a "director" as "a

3

person who is in charge of an activity, department, or organization,"[4] and BLACK'S LAW DICTIONARY defines "worship" as "the act of offering honor and adoration to the Divine Being."[5] Thus, the "Director of **Worship**" position -- akin to saying he is a "minister" -- by definition places him in a position of leadership and makes him a representative of the Parish with regard to worship. Indeed, Plaintiff concedes that he held himself out to parishioners with those titles [Compl., ¶9], and correspondingly the Parish held him out as a Parish representative on religious matters. *See Hosanna-Tabor*, 132 S.Ct. at 707 ("Called" teacher of school operated by member congregation of the Lutheran Church was a "minister" covered by the ministerial exception; teacher's title of "minister of religion" reflected a significant degree of religious training followed by a formal process of commissioning and teacher held herself out as a minister). The day a Director of **Worship**, a licensed ministerial position, is not ministerial *per se*, is the day words cease to have meaning.

Moreover, as stated above, *Tomic* has already established that the position of "music director" of a Catholic congregation, is ministerial. 442 F.3d at 1040-41. Importantly, there is no requirement under the ministerial exception that a minister be the ultimate arbiter of ecclesiastical decisions. It is sufficient that he be a representative of the Church to the faithful and/or that he perform religious functions. *See Hosanna-Tabor*, 132 S.Ct. at 707 (employee's "job duties reflected a role in conveying the Church's message and carrying out its mission"). Thus, Plaintiff's disavowment of certain responsibilities, such as the final selection of pieces of music [Compl., ¶¶11-14], is irrelevant. *See Tomic*, 442 F.3d at 1041 (Tomic found to be a music minister despite the fact "the rector or bishop could override Tomic's choices of what music to play").

---

[4]  http://www.oxforddictionaries.com/definition/english/director
[5]  http://thelawdictionary.org/worship/

Plaintiff's chicanery in disingenuously pleading to avoid a doctrine that inescapably bars his claim is not only precluded by his very job titles alone, but also constitutes a lack of candor toward the tribunal and a waste of judicial resources. As serious as that is, it is even more egregious because Plaintiff has employed these tactics in an attempt to deprive the Defendants of their fundamental constitutional right to religious freedom under both religion clauses of the First Amendment. The purpose of the ministerial exception is to prevent a court from intruding into a "religious thicket." *Serbian Eastern Orthodox Diocese for United States and Canada v. Milivojevich,* 426 U.S. 696, 719 (1976)). This is because "the very process of inquiry" violates the First Amendment. *N.L.R.B. v. Catholic Bishop of Chicago,* 440 U.S. 490, 502 (1979). For this reason, it is especially important that the Court grant this motion and stop this "impermissible inquiry" in its tracks. *Milivojevich,* 426 U.S. at 723.

## CONCLUSION

WHEREFORE, because Plaintiff's claims are barred by the ministerial exception, Holy Family Parish and the Archdiocese of Chicago respectfully request that Plaintiff's Complaint be dismissed, with prejudice.

Date: May 25, 2016

Respectfully submitted,
Holy Family Parish and the Archdiocese of Chicago,

By:     /s/ Alexander D. Marks
            One of its Attorneys

James C. Geoly
Alexander D. Marks
Burke, Warren, MacKay & Serritella, P.C.
330 North Wabash Avenue, 21st Floor
Chicago, Illinois 60611
Telephone:     (312) 840-7000
Facsimile:     (312) 840-7900
2211056

5

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on May 25, 2016, a true and correct copy of Defendants' Rule 12(b)(6) Motion to Dismiss was filed electronically using the Court's Electronic Case Filing System. A Notice of Electronic Filing will be sent by electronic mail to Plaintiff's counsel of record by operation of the Court's Electronic Filing System.

By:  /s/ Alexander D. Marks