IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| COLIN COLLETTE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 16-cv-2912 |
| ) | Judge Charles Kocoras |
| HOLY FAMILY PARISH, THE ) | |
| ARCHDIOCESE OF CHICAGO, ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS' REPLY IN SUPPORT OF RULE 12(b)(6)
MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Holy Family Parish (the "Parish") and the Archdiocese of Chicago, by and through their attorneys, for their reply in support of their Rule 12(b)(6) motion to dismiss Plaintiff's Complaint state as follows:

**ARGUMENT**

**A. The Facts Already Admitted By Plaintiff Are Sufficient For This Court To Make A Determination As To Application Of The Ministerial Exception.**

The admitted and undisputed facts already before this Court are sufficient for the Court to make a determination that Plaintiff was a "minister" for the purposes of the ministerial exception doctrine, mandating dismissal of his claim. Plaintiff admitted in his Complaint that he was the "Director of Worship" and the "Director of Music" at the Parish, and that he held himself out to parishioners as such. (Compl., ¶9). He further concedes in his Response that, in those positions, he "carried out the decisions of the Church's pastor … and the Church's Music Committee and Liturgy Committee." (Response, p. 10). Those admissions -- that he acted as a representative of the Catholic Church in positions that (1) have already been judicially found to be ministerial (*e.g.*, music director, *see Tomic v. Catholic Diocese of Peoria*, 442 F.3d 1036 (7th Cir. 2006)),

and (2) cannot be disputed as having religious involvement (*i.e.*, pastoral, musical, and liturgical) -- can lead to no other conclusion but that his position was "ministerial" under the multi-prong test in *Hosanna-Tabor Evangelical Lutheran Church and School v. EEOC et al.*, 132 S.Ct. 694 (2012).

Plaintiff first argues that no ministerial exception determination can be reached on a Rule 12(b)(6) motion prior to taking discovery. (Response, pp. 5-7, 10). Obviously, that depends on what Plaintiff alleges in his complaint. The logical conclusion of Plaintiff's argument is that even a "Catholic priest" dismissed as "pastor" of a parish would not be barred by the ministerial exception at the pleadings stage because the question of whether or not he is a minister is factual, even though there could be no dispute that a "priest" is a minister. Plaintiff's position is illogical and has no legal support. Rather, functionality fact determinations are only necessary in cases where an employee's title, on its own, is not determinative of the ministerial duties. *See, e.g. Herzog v. St. Peter Lutheran Church*, 884 F.Supp.2d 668 (N.D. Ill. 2012) ("called" teacher at religious school acted as minister); *Alicea-Hernandez v. Catholic Bishop of Chicago,* 320 F.3d 698 (7th Cir. 2003) (Archdiocese of Chicago "communications manager" was minister and could not bring Title VII national origin claim). However, where, like here, a plaintiff's title clearly establishes religious functions, coupled with admissions that Plaintiff actually acts as a representative of the Church on liturgical matters, there is no reason a ministerial exception determination cannot be made at the pleadings stage.

Plaintiff next argues (like in his artful pleading) that he "did not hold any *authority* within the church" (emphasis added) and the Parish's parishioners selected the music. (Response, p. 10). However, Plaintiff again confuses ecclesiastical authority with religious function. There is no requirement under the ministerial exception that a "minister" be the ultimate arbiter of

ecclesiastical decisions. It is sufficient that he simply be a representative of the Church to the faithful and/or that he perform religious functions, as both admitted here. *See Hosanna-Tabor*, 132 S.Ct. at 707 (employee's "job duties reflected a role in conveying the Church's message and carrying out its mission"); *Tomic*, 442 F.3d at 1041 (Tomic found to be a music minister despite the fact "the rector or bishop could override Tomic's choices of what music to play").

Plaintiff last argues, in conclusory fashion, that "many church employees have qualified to be non-ministers under existing case law." (Response, p. 8). However, the three cases Plaintiff cites for that proposition are easily distinguished. In *Dias v. Archdiocese of Cincinnati*, -- F.Supp.2d --, 2012 WL 1068165 (S.D. Ohio Mar. 29, 2012), a Catholic school <u>technology coordinator</u> with no religious duties filed a discrimination suit. The court determined the ministerial exception did not apply because the employee was not "h[e]ld … out as a minister," had no "religious title or commission," and had no "ministerial responsibilities." *Id.* at *5. In *Barrett v. Fontbonne Academy*, 33 Mass. L. Rep. 287 (2015), a <u>food service director</u>, *i.e.*, cafeteria worker, with no religious duties brought an employment discrimination claim. The ministerial exception was not raised as a defense. Rather, the defendant, a Catholic preparatory school, sought dismissal under a Massachusetts statute exempting certain "employers" from discrimination claims in employment, but the school did not qualify. *Id.* at *4. And in *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651 (6th Cir. 2000), a <u>teacher</u> at a religious school filed a pregnancy discrimination claim. The court analyzed whether the plaintiff had proven a prima facie case of discrimination and whether any fact issues existed. The ministerial exception was again not raised as a defense and therefore that case also provides no instruction. In each case, the employee, unlike Plaintiff here, held no religious duties and was not held out as a minister, and/or the ministerial exception was not even analyzed. In following-up on that argument,

3

Plaintiff tellingly states that the "exception would not apply to employment decisions concerning purely custodial or administrative personnel." (Response, p. 11). Defendants do not disagree. However, Plaintiff does not and could not assert that he was "purely custodial or administrative," nor conversely does he cite to *a single case* where a "Music Director" and/or a "Director of Worship" was *not* held to be ministerial.

B.  **Plaintiff Misreads And Mischaracterizes The Decisions In *Hosanna Tabor* And *Tomic*.**

Faced with controlling authority, Plaintiff misstates the holding in those cases. In *Tomic*, the Seventh Circuit indisputably decided that a music director, one of Plaintiff's positions here, fell within the ministerial exception. 442 F.3d at 1040-41 ("At argument Tomic's lawyer astonished us by arguing that music has in itself no religious significance—its only religious significance is in its words. The implication is that it is a matter of indifference to the Church and its flock whether the words of the Gospel are set to Handel's *Messiah* or to 'Three Blind Mice.' That obviously is false. … [M]usic is a vital means of expressing and celebrating those beliefs which a religious community holds most sacred. Music is an integral part of many different religious traditions, including the Catholic tradition.")

Plaintiff disingenuously argues that the controlling holding in *Tomic* was "reversed for the precise proposition that Defendants cite it -- that the Seventh Circuit affirmed the dismissal of a music director on a Motion to Dismiss the claim, prior to any fact-based inquiry." (Response, pp. 3-4). However, that was not the basis for reversal. Rather, in *Hosanna-Tabor*, the Supreme Court found that the ministerial exception is not a jurisdictional bar precluding a court from hearing a case, but rather is an affirmative defense, thus abrogating *Tomic* on other

4

grounds, precisely as Defendant cited it.[1] The Supreme Court did *not* find that a ministerial exception case could not be decided at the pleadings stage, or that a "fact based inquiry" served as a precursor to determining the exception's applicability. Rather, it simply held that a court must hear the case and determine whether the exception applies, at whatever stage may be appropriate under the Federal Rules. Nothing in *Hosanna-Tabor* changes the core holding of *Tomic* that a music director, like Plaintiff here, is a "minister" (a finding that is dispositive), nor does it preclude this Court from granting the instant Motion based on the procedural posture of this case.[2]

**C.     The Ministerial Exception Protects A Fundamental Constitutional Right And Applies Without Exception.**

Last, and implicitly conceding that the ministerial exception is applicable to this case, Plaintiff devotes a significant portion of his Response (pp. 12-16) to arguing that this Court should weigh the ministerial exception's absolute constitutional protection of religious liberty against the right to marry (*e.g.*, p. 12, "Defendants fail to show any nexus whatsoever between Mr. Collette's continued employment and the interference of free exercise of religion"). Stated differently, Plaintiff, believing the ministerial exception runs counter to the Church's teachings (*see, e.g.,* "[the exception] actually operates as a legal exemption from its own teachings to love and accept people as God made them," Response, p. 15), invites this Court not only to parse

---

[1]     That is, the Supreme Court found that the issue presented by the exception is whether the allegations the plaintiff makes entitle him to relief, not whether the court has power to hear the case. 132 S.Ct. at 709-710, n. 4.

[2]     Plaintiff spends several pages detailing other positions at the Parish, querying whether they are properly labeled as "ministers." (Response, pp. 8-10). While the Supreme Court in *Hosanna-Tabor* suggested a broad reading of the ministerial exception, the only issue before this Court is whether a "Director of Music" and "Director of Worship" is ministerial. Even caselaw cited by Plaintiff, himself, answers that question affirmatively. *See EEOC v. Roman Catholic Diocese*, 213 F.3d 795, 801 (4th Cir. 2000), cited at Response, p. 11, finding that "director of music ministry" position fell within the ministerial exception.

5

Catholic doctrine, but also to find that the decision in *Obergfell v. Hodges*, 135 S.Ct. 2584 (2015) somehow eradicated or, at a minimum, outweighs the rights protected by the ministerial exception; thus, in essence, proposing that the District Court overturn the Supreme Court's binding precedent in *Hosanna-Tabor*. Setting aside this Court's obligation to follow controlling precedent, those strawman arguments, comparing apples with oranges and/or espousing personal and theological beliefs, rather than legal analysis, are easily defeated.

The Supreme Court, in *Hosanna-Tabor*, found that the ministerial exception is required to protect a fundamental constitutional right of freedom of religion: "[b]y imposing an unwanted minister, the state infringes the Free Exercise Clause, which protects a religious group's right to shape its own faith and mission through its appointments. According the state the power to determine which individuals will minister to the faithful also violates the Establishment Clause, which prohibits government involvement in such ecclesiastical decisions." 132 S.Ct. at 706. The ministerial exception protects private persons and groups from government action that would interfere with the right to select (or request) a minister, such as through the federal discrimination laws. The Supreme Court has made clear that, in the context of a church's right to select its ministers, this protection is absolute, and involves no balancing of competing interests. Rather, the analysis begins and ends with a determination of whether the subject employee functions as a "minister."

Conversely, the decision in *Obergfell* found that the right to marry is a fundamental right under the Due Process and Equal Protection Clauses of the Fourteenth Amendment, and prohibited a *state* from infringing upon that right. The Defendants are not state actors and therefore did not infringe upon Plaintiff's right to marry. Rather, pursuant to *Hosanna-Tabor*, Defendants' right to religious freedom is protected from government interference by a ministerial

6

exception from federal employment discrimination statutes. As Plaintiff himself notes (Response, p. 16), the Supreme Court in *Obergfell* explicitly stated that despite its ruling allowing same-sex marriage, the "First Amendment [continues to] ensure[] that religious organizations … are given proper protection as they seek to teach the principles that are so fulfilling and so central to their lives and faiths… ." 135 S.Ct. 2607. The ministerial exception is one of those protections.

Indeed, the ministerial exception has been held to apply even where race discrimination -- the eradication of which is afforded the highest priority under our constitution -- has been alleged. *See Young v. Northern Illinois Conference of United Methodist Church*, 421 F.3d 184 (7th Cir. 1994) (Ministerial exception bars Title VII action brought by African-American woman who had served as probationary minister for church, where she alleged that church engaged in race and sex discrimination). The analysis does not change simply because discrimination against same-sex marriage is claimed.

Finally, and perhaps most alarming, is Plaintiff's attempt to argue that his same-sex marriage is somehow not truly incompatible with Catholic doctrine, or that true Catholic teaching would require the Defendants to retain him as a minister. (*See, e.g.,* Response, pp. 14-15). Apart from the obvious response that it is for the Defendants to define their own religious doctrine and to determine for themselves who may serve as their minister, Plaintiff's argument is fraught with precisely the free exercise and establishment clause dangers of excessive entanglement and resolution of religious questions that necessitated the ministerial exception in the first place. *See, e.g., Serbian Eastern Orthodox Diocese for United States and Canada v. Milivojevich,* 426 U.S. 696, 719 (1976); *N.L.R.B. v. Catholic Bishop of Chicago*, 440 U.S. 490, 502 (1979).

## CONCLUSION

After sifting through Plaintiff's artful pleadings, incongruous arguments, and a dissertation on his personal religious views, the Court is left with a determination of whether a "Director of Worship" and "Director of Music," who "carried out the decisions of the Church's pastor … and the Church's Music Committee and Liturgy Committee," is a representative of the Church who performed religious functions. Controlling case law, not to mention common knowledge, answer that question affirmatively, and discovery is not needed to determine what Plaintiff's admissions already confirm – he is a "minister" and the ministerial exception therefore applies. There is no need for discovery where the result is already conclusively established, and permitting further inquiry would only constitute a continued waste of judicial resources and the very violation of Defendants' First Amendment rights that the ministerial exception was intended to prevent. For those reasons, along with the reasons set forth in Defendants' opening brief, this Court should hold that Plaintiff's claims are barred by the ministerial exception, and his Complaint should be dismissed with prejudice.

Date: July 19, 2016

Respectfully submitted,
Holy Family Parish and the Archdiocese of Chicago,

By:    /s/ Alexander D. Marks
      One of its Attorneys

James C. Geoly
Alexander D. Marks
Burke, Warren, MacKay & Serritella, P.C.
330 North Wabash Avenue, 21st Floor
Chicago, Illinois 60611
Telephone: (312) 840-7000
Facsimile: (312) 840-7900
2259864.1

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on July 19, 2016, a true and correct copy of Defendants' Reply in Support of Rule 12(b)(6) Motion to Dismiss was filed electronically using the Court's Electronic Case Filing System. A Notice of Electronic Filing will be sent by electronic mail to Plaintiff's counsel of record by operation of the Court's Electronic Filing System.

By: /s/ Alexander D. Marks