UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN COLIN COLLETTE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 16 C 2912 |
| ) | |
| THE ARCHDIOCESE OF CHICAGO ) | Judge Charles P. Kocoras |
| and HOLY FAMILY CATHOLIC ) | |
| PARISH, ) | |
| ) | |
| Defendants. ) | |

## ORDER

Plaintiff John Colin Collette brings this three-count action against the Archdiocese of Chicago and Holy Family Catholic Parish ("Defendants"), alleging "employment discrimination based on sex, sexual orientation, and marital status." Dkt. 1, at ¶ 1. Collette asserts claims under Title VII, 42 U.S.C. § 2000, *et seq.* (Count I); the Illinois Human Rights Act, 775 ILCS 5/2 *et seq.* (Count II); and the Cook County Human Rights Ordinance, Cook County Code § 42-30, *et seq.* (Count III). Now before the Court is Defendants' Rule 12(b)(6) Motion to Dismiss Plaintiff's Complaint [10] asserting that Collette's claims "are barred by the First Amendment" under a doctrine known as the "ministerial exception," which precludes employment discrimination claims "brought by ministers of a church." Dkt. 10 at 1. For the reasons in the Statement below, Defendants' Motion [10] is denied, and this matter is set for a status on August 16, 2016, to set a limited discovery and dispositive motion schedule regarding the applicability of the ministerial exception in this case.

## STATEMENT

Collette alleges that he "is a gay male formerly employed with Defendants" at Holy Family Parish in Inverness, Illinois "for 17 years before he was terminated on July 27, 2014." Dkt. 1, ¶¶ 7-8. According to his Complaint, Collette "had concurrent titles of Director of Worship and Director of Music while employed with Defendants," and his employment was "without incident and he always met or exceeded the expectations of his employer." *Id*. at ¶¶ 9, 15. Collette further alleges that shortly before his termination, Defendants learned that Collette "was engaged to and intended to marry his same-sex partner," and after receiving this information, Defendants asked for Collette's resignation." *Id*. at ¶¶ 16-17. Collette allegedly "refused to resign and was terminated shortly thereafter on July 27, 2014." *Id*. at ¶ 18.

The Complaint also alleges that Collette "was shown emails" from the Archdiocese's Cardinal indicating that Collette's termination "was the result of his entering into a 'non-sacramental marriage,'" and that a statement published in Holy Family Parish's weekly church bulletin stated that Collette "had been terminated due to his 'participation in a form of union that cannot be recognized as a sacrament by the Church.'" *Id*. at ¶¶ 19-20. The Complaint adds that "Defendants currently employ many heterosexuals that have entered 'non-sacramental marriages,'" "many women that have become engaged" and eventually entered "marriages not sanctioned by the Catholic Church," and "many gay and lesbian employees who have not married same-sex partners." *Id*. at ¶¶ 21-23. Collette thus alleges that he "was terminated because of his sex, sexual orientation, and marital status." *Id*. at ¶ 24.

Defendants seek dismissal of Collette's claims under Fed. R. Civ. P. 12(b)(6). "Dismissal is appropriate under that rule when the factual allegations in the complaint, accepted as true, do not state a facially plausible claim for relief." *Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2016). "This case implicates the pleading principle that the mere presence of a potential affirmative defense does not render the claim for relief invalid.'" *Id.* (brackets omitted, quoting *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012)). The affirmative defense at issue here is "the ministerial exception," which is "grounded" in the Religion Clauses of the First Amendment, and "bars" an employment discrimination claim brought against a "religious institution" by one of its "ministers." *Hosanna-Tabor Evangelical Lutheran Church and Sch. v. E.E.O.C.*, 132 S. Ct. 694, 702-10 (2012) ("Both Religion Clauses bar the government from interfering with the decision of a religious group to fire one of its ministers.").

As the Supreme Court explained in *Hosanna-Tabor*, "the exception operates as an affirmative defense to an otherwise cognizable claim, not a jurisdictional bar." *Id.* at 709 n.4. Thus, under settled Seventh Circuit precedent, the ministerial exception provides a basis for the "unusual step" of dismissing a discrimination claim under Rule 12(b)(6) "only where the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense." *See Sidney Hillman Health Ctr. of Rochester v. Abbott Labs., Inc.*, 782 F.3d 922, 928 (7th Cir. 2015) (quoting *Chi. Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 613-14 (7th Cir. 2014)); *Hyson*, 821 F.3d at 939 (same). Collette's Complaint is not so equipped.

3

Fundamental to the ministerial exception's application is a determination of whether the plaintiff was "a "minister within the meaning of the exception." *Hosanna-Tabor*, 132 S. Ct. at 709. And while "applicability of the ministerial exception is a question of law for the court,"[1] the subsidiary determination of whether a discrimination plaintiff was a minister is both factual and case-specific. In *Hosanna-Tabor*, for example, the Court considered "the formal title given [the plaintiff] by the Church, the substance reflected in that title, her own use of that title, and the important religious functions she performed for the church." 132 S. Ct. at 708. Notably, however, the *Hosanna-Tabor* Court declined "to adopt a rigid formula for deciding when an employee qualifies as a minister," *id*. at 707, leaving lower courts free to consider similar indicia, as well as other factors more appropriate under the circumstances at hand. *See*, *e.g.*, *Cannata*, 700 F.3d at 177 (affirming summary judgment that Music Director was subject to exception: because *Hosanna-Tabor* "eschewed a 'rigid formula' and the application of a bright-line test," application of ministerial exception "does not depend on a finding that Cannata satisfies the same considerations that motivated the Court" in *Hosanna-Tabor*; "it is enough to note that there is no genuine dispute that Cannata played an integral role in the celebration of

---

[1] *Alicea-Hernandez v. Archdiocese of Chi.*, 01 C 8374, 2002 WL 598517, at *4 (N.D. Ill. Apr. 18, 2002), *aff'd*, 320 F.3d 698 (7th Cir. 2003); *accord Fratello v. Roman Catholic Archdiocese of N.Y.*, -- F. Supp. 3d --, 2016 WL 1249609, at *8 (S.D.N.Y. Mar. 29, 2016) (citing *Conlon v. InterVarsity Christian Fellowship*, 777 F.3d 829, 833 (6th Cir. 2015)); *Preece v. Covenant Presbyterian Church*, No. 8:13CV188, 2015 WL 1826231, at *3 (D. Neb. Apr. 22, 2015); *Cannata v. Catholic Diocese of Austin*, No A-10-CA-375, 2011 WL 4352771, at *6 (W.D. Tex. Sept. 16, 2011), *adopted*, 2011 WL 7074303, *aff'd*, 700 F.3d 169 (5th Cir. 2012).

Mass and that by playing the piano during services, Cannata furthered the mission of the church and helped convey its message to the congregants"); *Fratello*, 2016 WL 1249609, at *10 (considering *Hosanna-Tabor* factors and "the specific circumstances of Plaintiff's employment" to grant summary judgment that school principal was subject to exception, "in light of the Supreme Court's explicit rejection of 'a rigid formula for deciding when an employee qualifies as a minister'"); *Herzog v. St. Peter Lutheran Church*, 884 F. Supp. 2d 668, 673 (N.D. Ill. 2012) (considering *Hosanna-Tabor* factors to grant summary judgment that teacher was subject to exception, since "the facts of this case are sufficiently similar to those in *Hosanna-Tabor*").

Defendants nevertheless seek summary dismissal without attendance to such factors by relying solely on Collette's admitted "concurrent titles of Director of Worship and Director of Music." Dkt. 1, ¶ 9. According to Defendants, the former is "by definition" a minister within the meaning of the exception, and the latter was "established" as ministerial in *Tomic v. Catholic Diocese of Peoria*, 442 F.3d 1036 (7th Cir. 2006). *See* Dkt. 10, at 3-4; Dkt. 16, at 2. But as the Supreme Court explained in *Hosanna-Tabor*, while the "formal title" given an employee by a religious institution is "surely relevant," "a title, by itself, does not automatically ensure coverage" of the ministerial exception. 132 S. Ct. at 708. Also relevant, in addition to the factors outlined above, are whether "significant religious training and a recognized religious mission underlie the description of the employee's position." *Id*. Collette's Complaint lacks sufficient information regarding these points and instead alleges what his role as Director of Worship and Music Director did ***not*** include: "he

5

was not responsible for planning the liturgy or selecting the music played during masses and services," Dkt. 1 at ¶9; he "never planned the liturgy for masses," *id*. at ¶ 12; and he "never selected nor approved music for masses." *Id*. at ¶10. A factual record focused on Collette's functional role as Director of Worship and Music Director is therefore needed to determine whether that role was ministerial. *See Fratello*, 2016 WL 1249609, at *7 (summary judgment on ministerial exception after court "directed the parties to engage in limited discovery on the issue").[2]

Nor does the Seventh Circuit's decision in *Tomic* support summary dismissal here. Although the Court disagrees with Collette's assertion that *Tomic* was "reversed on the precise proposition for which Defendants cite it" (Dkt. 13, at 4),[3] the Court also rejects Defendants' argument that the decision "established" that a "Music Director" is necessarily "ministerial" within the meaning of the exception. Dkt. 10, at 4. Rather, *Tomic* considered the diocesan and church "job description[s]" for that position and their requirements that the music director "assist the Office of Divine Worship in preparing and celebrating various diocesan liturgies" and "in planning and

---

[2] Contrary to Defendants' Reply, neither this Court's decision in *Herzog v. St. Peter Lutheran Church*, 884 F. Supp. 2d at 673, nor the Seventh Circuit's decision in *Alicea-Hernandez v. Catholic Bishop of Chi.*, 320 F.3d 698 (7th Cir. 2003), suggests that a ministerial determination may be made based on "an employee's title, on its own." *See* Dkt. 16, at 2; *Alicea-Hernandez*, 320 F.3d at 704 n.4 ("We note that the realities of the position and not the title render her position ministerial."); *Herzog*, 884 F. Supp. 2d at 673 (considering all *Hosanna-Tabor* factors when granting summary judgment that teacher with "Minister of Religion" title was ministerial).

[3] *Hosanna-Tabor* abrogated *Tomic* solely as to its holding (along with other decisions that similarly held) that the ministerial exception was a "jurisdictional bar," rather than an "affirmative defense." *See* 132 S. Ct. at 709 n.4.

celebrating liturgical events as requested," "play the organ for masses and other events, including weddings and funerals," "prepare music for all Parish masses and liturgies . . . in consultation with the Rector/Pastor where necessary," and "recruit, train, direct, and rehearse the members of the chorus." 442 F.3d at 1037. Noting the "religious significance" of the music played at a particular type of service, the court concluded that music selection required "a discretionary religious judgment." *Id*. at 1040. The Music Director in *Tomic* thus "performed tasks that were 'traditionally ecclesiastical or religious,'" and thus, "religious functionaries," even if the rector or bishop "could override Tomic's choices of what music to play." 442 F.3d at 1041-42.

While Collette's positions as Music Director and Director of Worship may well have entailed similarly ecclesiastical tasks (like the Music Directors in *Tomic* and *Cannata*), his Complaint (which is controlling at this juncture) admits no such activity and instead denies involvement in "planning the liturgy or selecting the music played during masses." Dkt. 1 at ¶9. Even Defendants concede that Collette's Complaint seeks "to avoid" the ministerial exception, Dkt. 10, at 5, which is hardly unusual. *See Cannata*, 700 F.3d at 172 n.3 (affirming summary judgment that Music Director's position was ministerial, but observing: "Given the nature of the ministerial exception, we suspect that only in the rarest of circumstances would dismissal under rule 12(b)(6)—in other words, based solely on the pleadings—be warranted."). Accordingly, Defendants' Motion to Dismiss is denied, and this matter is set for status to set a limited discovery and dispositive motion schedule on Defendants' ministerial-exception defense, in order to resolve that issue at the earliest opportunity.

To help focus the discovery to be taken in this phase, the Court notes that the scope of the issue subject to discovery is narrow. As there is no dispute that Defendants are religious institutions, the only remaining question is whether Collette's employment with them was ministerial. The Court also notes and rejects Collette's suggestion that, in this case, the ministerial exception raises additional questions of potential constitutional significance, namely whether "the Catholic Church has deprived Mr. Collette of his constitutional fundamental right to marry," whether the Church is "discriminating under the protections afforded it by the rubric of the free exercise clause," and "whether the church's rights under the establishment clause are paramount to Mr. Collette's right to marry his partner." *See* Dkt. 13, at 3.

*Hosanna-Tabor* expressly rejected the suggestion that the ministerial exception's viability in an employment discrimination lawsuit hinges upon the motivation or effect of the religious institution's employment decision. 132 S. Ct. at 709. As the Court explained, "[t]hat suggestion misses the point of the ministerial exception." *Id*. "The purpose of the exception is not to safeguard a church's decision to fire a minister only when it is made for a religious reason." *Id*. "The exception instead ensures that the authority to select and control who will minister to the faithful—a matter 'strictly ecclesiastical'—is the church's alone." *Id*. (quoting *Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church in N.A.*, 344 U.S. 94, 119 (1952)). "When a minister who has been fired sues her church alleging that her termination was discriminatory, the First Amendment has struck the balance for us. The church must be free to choose those who will guide it on its way." *Id*. at 710.

8

## CONCLUSION

For the foregoing reasons, the Rule 12(b)(6) Motion to Dismiss Plaintiff's Complaint of Defendants Holy Family Parish and The Archdiocese of Chicago [10] is denied; and Defendants are allowed until August 12, 2016 to file their answer and any affirmative defenses to Collette's Complaint.[4]  This matter is set for status on August 16, 2016, at 9:30 a.m. to set a limited discovery and dispositive motion schedule regarding the applicability of the ministerial exception in this case.

_____

Dated:  July 29, 2016

Charles P. Kocoras
United States District Judge

---

[4] Another affirmative defense potentially raised by Collette's Complaint is whether he exhausted all necessary administrative remedies.  But this, too, is "not clear from the face" of the Complaint.  *See Bibbs v. Sheriff of Cook Cnty.*, 618 Fed. App'x 847, 849-50 (7th Cir. 2015).  While the Complaint alleges Collette's receipt of a right-to-sue letter from the EEOC and refers parenthetically to "Ex. A" (Dkt. 1, ¶ 3), the Court can locate no such exhibit, nor does the Complaint allege the date that such a right-to-sue letter was received.  Defendants are entitled to raise any such defenses in their answer, and the parties are directed to advise the Court of any outstanding issues relating to exhaustion at the next scheduled status.