IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| COLIN COLLETTE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 16-cv-2912 |
| | ) | Judge Charles Kocoras |
| HOLY FAMILY PARISH, THE | ) | |
| ARCHDIOCESE OF CHICAGO, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY
JUDGMENT AS TO MINISTERIAL EXCEPTION AFFIRMATIVE DEFENSE**

Defendants Holy Family Parish ("Parish") and the Archdiocese of Chicago ("Archdiocese"), by and through their attorneys, for their reply in support of motion for summary judgment on ministerial exception defense state as follows:

**INTRODUCTION**

Plaintiff, in his Response, not only failed to rebut the evidence presented by Defendants as to the ministerial role he held at the Parish, but readily admitted that he performed "religious duties" like "facilitating the work of the Liturgy Planning and Preparation Committee and the Music Selection Committee." Indeed, Plaintiff even went as far as voluntarily offering that he was held out to the Parish congregation as a minister in a "spiritual sense." Thus, both Defendants *and Plaintiff himself* have established Plaintiff's qualification for the ministerial exception -- *i.e.*, he was held out by the church as its representative in a religious role -- and this Court's inquiry may end there.

Despite the uncontroverted evidence and his own controlling admissions, Plaintiff nonetheless speciously argues that he was not a "minister" because he was never "called" through

a "formal commissioning process." However, as this Court is well aware, the ministerial exception is not dependent upon ordination, but rather upon the function of the position. Indeed, controlling caselaw is replete with "lay" individuals who were in no fashion "called," "ordained," or "commissioned," but nonetheless were still found to be "ministers" because of their function. Second, Plaintiff argues that he was not a minister because he only facilitated and contributed to, but did not have final say over, the Parish's weekly music and liturgy plans. However, Plaintiff again widely misses the mark. Unilateral authority over ecclesiastical decisions is not a requirement to satisfy the ministerial exception; rather, controlling law again holds the exact opposite. Accordingly, as set forth more fully below, summary judgment is appropriate.

## ARGUMENT

### A. Plaintiff Admits He Performed Religious Duties As A Representative Of The Parish And Thus His Position Was Ministerial.

It is axiomatic that "[o]nce the moving party puts forth evidence showing the absence of a genuine dispute of material fact, the burden shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute." *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). Here, Plaintiff, in his Response, failed to controvert nearly *all* of Defendants' evidence submitted in support of summary judgment, and indeed, conceded the religious role he held as a representative the Parish. Thus, there is no genuine dispute of any question of material fact.

Specifically, Plaintiff **admitted** that he: **(a)** held the dual titles of Director of Worship and Director of Music, by which he held himself out to Parishioners (Memorandum Response, pp. 3, 14), including specifically referring to himself as a minister (*id.*, p. 7); **(b)** was held out by the Parish in a "spiritual sense," including being listed in the Parish bulletins "under the Pastoral Staff section directly beneath the pastor" and being given his own bulletin page (Response to St. of Facts, ¶¶22-23); **(c)** had theological training and a graduate degree in liturgy/theology, the latter

of which was a job requirement for his position(s) at the Parish (Memorandum Response, pp. 8-9); **(d)** performed "religious duties" during his employment at the Parish, including "facilitating the work of the Liturgy Planning and Preparation Committee and the Music Selection Committee" (*id.*, pp. 11-12; Ex. 2, Collette Affidavit, ¶17); **(e)** "contributed [] ideas and thoughts about the best selection for music for [] masses and services" and "[gave] input on the Liturgy Plan" (Ex. 2, Collette Affidavit, ¶¶20, 41); **(f)** played "music at ceremonies and arrange[d] music, as well as le[d] music" (Response to St. of Facts, ¶17); **(g)** "shared [his] education and knowledge of the scripture, liturgy, and Catholic church with the [Parish] Community" (*id.*, ¶55); **(h)** recorded religious videos for the Parish's YouTube channel "aimed at … empowering the laity," oversaw spiritual ministries, "contributed materials for publication," and "gave lectures" (Memorandum Response, pp. 10-11, Ex. 2, Collette Affidavit, ¶46, 49, 52, 65); **(i)** was working toward a Pastoral Associate Certification as a continuation of his religious studies (*id.*, pp. 6, 9); and **(j)** described his role at the Parish as essentially "serv[ing] … as a pastoral associate for many years," including that his Parish experience "helped [him] mature and grow as a minister" (Response to St. of Facts, ¶34).

Accepting Plaintiff at his own word, he was employed in a leadership position at a Roman Catholic church where he performed religious duties, including convening and leading groups of parishioners to fashion music and liturgy recommendations for the pastor. That, alone, checks every single box evaluated under the "functionality" test set forth in *Hosanna-Tabor Evangelical Lutheran Church and School v. EEOC et al.,* 132 S.Ct. 694 (2012) (*i.e.*, job title, if held out as a minister, degree of religious training, and duties reflecting role in conveying and carrying out the church's message, teachings, and mission). As Plaintiff has not only failed to create any material

3

question of fact, but readily admits the religious leadership role held at the Parish, summary judgment is appropriate under applicable law.

**B.	A Lay Employee May Be Ministerial.**

Unable to hide (like in his Complaint and at the Rule 12 motion stage) from the ministerial functions he did perform, Plaintiff primarily argues that his position was not "ministerial" because he was never "called" or underwent a "formal commissioning process." (Memorandum Response, p. 6). However, the "ministerial exception" is not limited to "ordained" clergy, but rather also applies to lay employees, like Plaintiff, who merely "functioned" as a "minister."

For example, in *Alicea-Hernandez v. Catholic Bishop of Chicago*, 320 F.3d 698 (7th Cir. 2003), a female communications manager working for the Archdiocese of Chicago alleged that she was discriminated against on the basis of her gender and national origin, as well as retaliated against for filing an Equal Employment Opportunity Commission charge. The manager's job responsibilities included "composing media releases for the Hispanic community; composing correspondence for the Cardinal; developing a working relationship with the Hispanic media and parishes in the Hispanic community to promote Church activities; developing a working relationship with the Hispanic community to enhance community involvement; composing articles for Church publications; and translating Church materials into Spanish." *Id.* at 700. She was not "ordained" or "called," and held less religious training and was less directly involved in developing religious content (like liturgy plans) than the Plaintiff here. Nonetheless, the Seventh Circuit found that the manager "functioned" as a "minister," *i.e.*, was held out by the church in a religious role, including because she communicated on behalf of the Archdiocese (like Plaintiff communicated here on behalf of the Parish) and a church has an absolute right to choose who speaks on its behalf: "[t]he role of the press secretary is critical in message dissemination, and a

church's message, of course, is of singular importance." *Id.* at 703-04. Critically, as to Plaintiff's above-argument, in evaluating the ministerial exception, the court specifically noted that it did "not look to ordination but instead to the function of the position." *Id.* (citing *EEOC v. Roman Catholic Diocese,* 213 F.3d 795, 801 (4th Cir.2000) ("Our inquiry thus focuses on 'the function of the position' at issue and not on categorical notions of who is or is not a 'minister.'"))

Thus, formal ordination is not required to satisfy the ministerial exception, and the fact that Plaintiff, here, was not "ordained" or "called" is meaningless. Indeed, if being ordained were a litmus for the ministerial exception, the "functionality" test described and applied in all of the applicable caselaw would never be needed.[1]

## C. Unilateral Authority Over Ecclesiastical Decisions Is Irrelevant.

Plaintiff's second unsupported argument as to why he was purportedly not ministerial is that he did not have unilateral authority over the final liturgy and music decisions. (Memorandum Response, pp. 9, 11, 12, etc.). Plaintiff again confuses ecclesiastical authority with religious function. There is no requirement under the ministerial exception that a "minister" be the ultimate arbiter of ecclesiastical decisions, and Plaintiff cites no caselaw supporting the same. To the contrary, controlling law holds exactly the opposite. *See, e.g., Tomic v. Catholic Diocese of Peoria*, 442 F.3d 1036, 1041 (7th Cir. 2006) (music director position found to be ministerial despite the fact "the rector or bishop could override Tomic's choices of what music to play"); and *Alicea-Hernandez*, 320 F.3d at 700 (spokesperson without ultimate decision making authority found to be ministerial).

---

[1] Plaintiff's argument that the Archdiocese listed him as a "religious professional" rather than a "minister" on his Visa worker application is immaterial for the same reason. (Memorandum Response, p. 3). The term "minister" on that immigration form is reserved for only ordained ministers, (https://www.uscis.gov/green-card/green-card-through-job/green-card-through-special-categories-jobs/green-card-religious-worker-minister-or-nonminister) and, regardless, Plaintiff's admittance into this country as a "religious professional" only further confirms the religious nature of the work he performed.

5

Indeed, even ordained priests report to bishops and archbishops, who in turn report to the Pope. Plaintiff surely could not plausibly contend such oversight precludes ministerial functioning. Rather, it is sufficient that any individual, lay or otherwise, simply be a representative of the Church to the faithful and/or perform religious functions, as both admitted here. *See Hosanna-Tabor,* 132 S.Ct. at 707 (employee's "job duties reflected a role in conveying the Church's message and carrying out its mission").

Tellingly, Plaintiff does little more than superficially address the holding in *Tomic* (Memorandum Response, p. 13), a case involving a music director that is directly on point. In conjunction, Plaintiff fails to cite to *a single case* where a "Music Director" and/or a "Director of Worship" was *not* held to be ministerial.

### D. Parish Congregation Members Not Employed In Leadership Roles.

Last, Plaintiff also argues that many members of the congregation were involved in the liturgy and music committees, and/or that he performed many "dut[ies] and obligation[s] … that [were] also performed by parishioners and congregants" (Memorandum Response, p. 13) -- thus apparently claiming he was no different than a non-employed, congregant member. Setting aside a mere congregation member is not the plaintiff in this case, under the "functionality" test laid out in *Hosanna-Tabor*, a parishioner who simply volunteered in his/her church is easily distinguished from the church's employed "Director of Worship" and "Director of Music," who held a graduate degree in liturgy/theology (a job requirement), facilitated the laity's involvement in an official capacity and was held out in a leadership role. Regardless, the Parish had the same constitutional right to make an ecclesiastical decision as to which volunteer parishioners served on the liturgy committee as it had in terminating Plaintiff's employment in which he presided over that

6

committee. The only difference is that those volunteers would have no right to assert the employment claims Plaintiff did here, which are subject to the ministerial exception.

## **CONCLUSION**

There is no dispute that Plaintiff performed religious functions during his employment in leadership positions, making his employment ministerial and entitling Defendants to their fundamental constitutional right to religious freedom under both religion clauses of the First Amendment in terminating his employment. For all of these reasons, and those set forth in Defendants' opening brief, this Court should grant summary judgment and award Defendants' their costs.

Date:   December 20, 2016

Respectfully submitted,
Holy Family Parish and the Archdiocese of Chicago,

By:    /s/ Alexander D. Marks
        One of its Attorneys

James C. Geoly
Alexander D. Marks
Burke, Warren, MacKay & Serritella, P.C.
330 North Wabash Avenue, 21st Floor
Chicago, Illinois 60611
Telephone:    (312) 840-7000
Facsimile:    (312) 840-7900
2358021

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on December 20, 2016, a true and correct copy of Defendants' Reply in Support of Motion for Summary Judgment was filed electronically using the Court's Electronic Case Filing System. A Notice of Electronic Filing will be sent by electronic mail to Plaintiff's counsel of record by operation of the Court's Electronic Filing System.

By: /s/ Alexander D. Marks