## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| COLIN COLLETTE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 16 C 2912 |
| v. | ) | |
| | ) | Judge Charles P. Kocoras |
| HOLY FAMILY PARISH, THE | ) | |
| ARCHDIOCESE OF CHICAGO, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Before the Court is Defendants' Holy Family Parish (the "Parish") and the Archdiocese of Chicago ("Archdiocese") (collectively, "Defendants") motion for summary judgment against Plaintiff Colin Collette ("Collette") under Federal Rule of Civil Procedure 56. For the following reasons, the Court grants Defendants' motion.

## STATEMENT

In July 2014, Collette proposed marriage to his longtime partner Will Nifong ("Nifong"). Upon learning of Collette's engagement, Defendants terminated his employment on July 27, 2014. Prior to his termination, Collette had served as the Parish's Director of Music and Director of Worship for seventeen years. On March 3, 2016, Collette filed this suit against Defendants, alleging "employment discrimination based on sex, sexual orientation, and marital status." Defendants moved to dismiss the Complaint, asserting that Collette's claims "are barred by the First Amendment"

under the "ministerial exception," which precludes employment discrimination claims "brought by ministers of a church." This Court denied Defendants' motion to dismiss and set a limited discovery and dispositive motion schedule with respect to the applicability of the ministerial exception in this case. Defendants now seek summary judgment in their favor, and we grant it.

Summary judgment is appropriate when the pleadings, discovery, disclosures, and affidavits establish that there is no genuine issue of material fact, such that the movant is entitled to judgment as a matter of law. *Winsley v. Cook Cnty.*, 563 F.3d 598, 602–03 (7th Cir. 2009). A genuine issue of material fact exists when, based on the evidence, a reasonable jury could find in favor of the non-moving party. *Trinity Homes LLC v. Ohio Cas. Ins. Co.*, 629 F.3d 653, 656 (7th Cir. 2010). Facts are taken from the parties' briefs and the attached exhibits. We construe all facts and draw all reasonable inferences in favor of the non-moving party. *Smith v. Hope Sch.,* 560 F.3d 694, 699 (7th Cir. 2009).

The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. Amend. I. The Supreme Court has recognized the right of religious organizations to control their internal affairs. *See Watson v. Jones*, 80 U.S. 679, 727 (1872). This right includes the freedom "to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine." *Kedroff v. St. Nicholas Cathedral*, 344 U.S. 94, 116 (1952). Matters of church government include

2

the right of churches to select their own leaders. *Serbian E. Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 724–25 (1976). For that reason, the Court has recognized the existence of a "ministerial exception," which "precludes application of [employment discrimination] legislation to claims concerning the employment relationship between a religious institution and its ministers." *Hosanna–Tabor*, 132 U.S. 695, 705 (2012). In determining whether an employee is considered a minister, courts "look not to ordination but instead to the function of the position." *Alicea-Hernandez v. Catholic Bishop of Chi.*, 320 F.3d 698, 703 (7th Cir. 2003). The question for this Court is whether Collette's position as Director of Worship and Director of Music can functionally be classified as ministerial.

Collette argues that "all the circumstances of his employment when viewed in [the] aggregate show [he] was not a minister, but rather, a highly educated lay person employed by Holy Family to facilitate its mission of lay empowerment." There is no rigid formula "for deciding when an employee qualifies as a minister." *Hosanna–Tabor*, 132 U.S. at 708. Instead, courts look to the facts of the specific case. *Id.* Courts have found non-ordained employees to be ministerial employees when they are responsible for conveying a church's message, *Alicea-Hernandez*, 320 F.3d at 704, teaching the faith, *Hosanna-Tabor*, 132 U.S. at 708, and carrying out the church's mission. *Id.* Here, the evidence is overwhelming that Collette's positions at the Parish were critical to the spiritual and pastoral mission of the church.

3

Defendants argue that Collette's position as Director of Music made him a key ministerial employee of the Parish. We agree. As the Seventh Circuit noted in *Tomic v. Catholic Diocese of Peoria*, "Music is a vital means of expressing and celebrating those beliefs which a religious community holds most sacred." 442 F.3d 1036, 1040–41 (7th Cir. 2006) (citation omitted). Similarly, in *Cannata v. Catholic Diocese of Austin*, the Fifth Circuit, referencing materials prepared by the United States Conference of Catholic Bishops, noted music's special role in the liturgy. 700 F.3d 169, 177 (5th Cir. 2012). It stated that "[m]usic in the liturgy is sacred and has ritual and spiritual dimensions. Music enhances the prayer that occurs in the Catholic Mass by enriching its elements." *Id*. Collette argues that he is not a minister because he only facilitated and contributed to, but did not have final say over, the Parish's weekly music plans. However, authority over ecclesiastical decisions is not a requirement to satisfy the ministerial exception. *See, e.g., Tomic*, 442 F.3d at 1041 (finding music director position to be ministerial despite the fact "the rector or bishop could override Tomic's choices of what music to play"); *Alicea-Hernandez*, 320 F.3d at 700 (finding spokesperson without ultimate decision making authority ministerial).

Collette stated in his affidavit that, as Director of Music, his primary job duty was "facilitating . . . the Music Selection Committee." He specified that the sole purpose of the committee "was to choose the music for Holy Family's masses and services." Additionally, Collette's affidavit proclaimed that he was the only Parish employee on the Music Selection Committee. While serving as a member of the

4

Music Selection Committee, Collette "contributed [his] ideas and thoughts about the best selections for music for Holy Family" services. As the Seventh Circuit found in *Tomic*, a position can be found to be ministerial if it requires the participant to undertake religious duties and functions. 442 F.3d at 1041. Here, Collette worked with church volunteers to choose the music that would enhance the prayer offered at mass. Choosing songs to match the weekly scripture required the group, including Collette, to make discretionary religious judgments since the Catholic Church does not have rules specifying what piece of music is to be played at each mass. *Id.* at 1040. In addition to his role on the Music Selection Committee, Collette also played music at church ceremonies, including at weddings and funerals. By playing music at church services, Collette served an integral role in the celebration of mass. Collette's musical performances furthered the mission of the church and helped convey its message to the congregants. *See id.*; *Cannata*, 700 F.3d at 177. Therefore, Collette's duties as Musical Director fall within the ministerial exception.

Furthermore, Defendants contend that Collette's role as Director of Worship was also ministerial. While Defendants acknowledge that Collette did not have final approval over the weekly Liturgy Plan, they claim the evidence demonstrates that Collette was a central figure in helping craft the themes, prayers, and other elements of the Parish's masses. In contrast, Collette argues that his role as Director of Music was not ministerial. Instead, Collette asserts he was employed by the Parish to facilitate parishioner engagement in the Liturgy Plan. Additionally, Collette

maintains that, even if his work with Parish directors and parishioners aided in the creation of the Liturgy Plan, Father Terence Keehan's ("Fr. Keehan") ability to unilaterally alter the Liturgy Plan prevents Collette from being considered a minister.

According to Collette's affidavit, Fr. Keehan insisted "that no one person should be responsible for the Liturgy Plans, but instead [] they should be created with the input of all Holy Family's directors." As the Director of Worship, Collette, along with Fr. Keehan and Jill Piccolino ("Piccolino"), Assistant Director of Worship at the Parish, hosted five to ten meetings throughout the year with church parishioners to "discuss upcoming liturgies [and] to collect the group's collaborative ideas for prayers, themes, and other parts of the liturgy." For these meetings, Collette "set the agenda and [brought the] readings that the committee needed to discuss." Fr. Keehan, Piccolino, and Collette also hosted "presider dinners at least twice a year for priests who would be celebrating Christmas, Advent, Easter and Lent Masses." During these dinners, "the participants would discuss upcoming liturgies and share ideas for themes and collaborative conversation." Based on the collaboration from these meetings and dinners, Piccolino would craft a first draft of the Liturgy Plan for the week. Every Tuesday, at noon, Piccolino would meet with Fr. Keehan and Collette to confer over the proposed Liturgy Plan. Following their conversation, Piccolino, Fr. Keehan, and Collette would convene the remaining Parish directors for a discussion regarding the upcoming week's services. At this meeting, all the directors, including Collette, contributed ideas and input for the upcoming liturgy. Since Collette's responsibilities

6

as Director of Worship were specifically oriented toward helping the church carry out the celebration of mass, he again falls within the ministerial exception.

For these reasons, Defendants' motion for summary judgment is granted.   It is so ordered.

Dated:  4/18/2017

Charles P. Kocoras
United States District Judge

7